IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JUANA SERRANO,                          :
                                        :
                    Plaintiff,          :        CIVIL ACTION
                                        :
         v.                             :        NO. 20-3985
                                        :
KILOLO KIJAKAZI,[1] ACTING              :
COMMISSIONER OF THE                     :
SOCIAL SECURITY                         :
ADMINISTRATION,                         :
                                        :
                    Defendant.          :

## MEMORANDUM OPINION

Juana Serrano ("Serrano" or "Plaintiff") seeks review, pursuant to 42 U.S.C.

§ 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying her

claim for Supplemental Security Income ("SSI").[2]  For the reasons that follow, Serrano's

Request for Review will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Serrano was born on July 22, 1987.  R. at 28.[3]  She has at least a high school education

and is able to communicate in English.  Id.  She has no past relevant work experience.  Id.  On

---

[1]    Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the Defendant in this action.  No further action need be taken to continue this case pursuant to Section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[2]    In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment.  See Doc. Nos. 3, 7.

[3]    Citations to the administrative record will be indicated by "R." followed by the page number.

July 27, 2017, Serrano filed an application for SSI pursuant to Title XVI of the Social Security Act.  Id. at 20.  She alleged that she became disabled on December 31, 2015.  Id.  The application was initially denied on November 9, 2017.  Id.  Serrano then filed a written request for a hearing on December 22, 2017.  Id.  A hearing regarding the denial of her SSI application was held before an Administrative Law Judge ("ALJ") on March 20, 2019.  Id.  On May 20, 2019, the ALJ issued an opinion finding that Serrano was not disabled.  Id. at 29.  The Appeals Council denied Serrano's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner.  Id. at 2-3.  Serrano then commenced this action in federal court.

## II.   THE ALJ'S DECISION

In her decision, the ALJ found that Serrano suffered from the following severe impairments: disorders of the spine, obesity, depression, and post-traumatic stress disorder ("PTSD").  Id. at 22.  The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment.  Id.  The ALJ determined that Serrano retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b), except avoid extremes of temperature, wetness, dust, fumes, gases, and pulmonary irritants; avoid hazards; no climbing of ladders; limited to routine, repetitive tasks with infrequent changes in the work setting; occasional interact[ion] with coworkers and supervisors; and interaction with public limited to rare to none.

Id. at 24.

Relying on the vocational expert who appeared at the hearing, the ALJ found that there were jobs that existed in significant numbers in the national economy that Serrano could perform, such as in a packing, assembly, or inspector position.  Id. at 28-29.  Accordingly, the ALJ found that Serrano was not disabled.  Id. at 29.

III.   <u>**SERRANO'S REQUEST FOR REVIEW**</u>

In her Request for Review, Serrano contends that the ALJ erred in: (1) improperly weighing the opinions of her treating physician and a consultative examiner; and (2) failing to develop the record by not enforcing a subpoena for records from a treating medical source.

IV.   <u>**SOCIAL SECURITY STANDARD OF REVIEW**</u>

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence."  42 U.S.C. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986); <u>Newhouse v. Heckler</u>, 753 F.2d 283, 285 (3d Cir. 1985).  A reviewing court may not undertake a de novo review of the Commissioner's decision to reweigh the evidence.  <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."  <u>Schwartz v. Halter</u>, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review.  <u>See</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004).  Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999) (quoting <u>Pierce v. Underwood</u>, 487 U.S. 552, 564-65 (1988)); <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987).  It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted).  The court's review is plenary as to the ALJ's application of legal standards.

Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 423(d)(1); accord id. § 1382c(a)(3)(A). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted); accord id. § 416.920.

## V.    DISCUSSION

### A.    Substantial Evidence Supports the ALJ's Finding That the Opinion of Serrano's Treating Therapist Was "Not Overly Persuasive"

Serrano argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not properly evaluate the opinion of her treating psychotherapist, James Martelo, M.H.P.  Pl.'s Br. (Doc. No. 21) at 6-10.

Under applicable regulations and controlling case law,[4] when considering a medical opinion, the ALJ is not required to give any "specific evidentiary weight, including controlling weight" to any one opinion.  20 C.F.R. § 404.1520c(a).  Instead, the ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Id. § 404.1520c(a)-(c).  The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. § 404.1520c(a).  The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. Heisey v. Saul, No. 20-324, 2020 WL 6870738, at *9 (E.D. Pa. Nov. 23, 2020).  "The more relevant the medical evidence and supporting explanations provided by a medical source are to support his or her medical opinion . . . , the more persuasive the medical opinion . . . ." 20 C.F.R. § 404.1520c(c)(1).  In addition, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion . . . will be." Id. § 404.1520c(c)(2).

Mr. Martelo treated Serrano on a weekly basis since May 2015 at Asociacion Puertorriquenos en Marcha ("APM").  R. at 1431.  On January 23, 2018, he opined that Serrano "has a [b]orderline ability to understand, retain, concentrate and follow instructions; a below

---

[4]     The Commissioner made "sweeping changes" to the rules regarding the evaluation of medical opinion evidence that became effective on March 27, 2017. Lepperd v. Berryhill, No. 16-02501, 2018 WL 1571954, at *6 n.10 (M.D. Pa. Feb. 20, 2018) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017)), report and recommendation adopted, No. 16-2501, 2018 WL 1566662 (M.D. Pa. Mar. 30, 2018). Those changes abandoned the treating-physician rule. See 20 C.F.R. § 404.1520c.  Because Serrano filed her application for SSI benefits after March 27, 2017, all medical opinions will be evaluated in accordance with the changed rules.

[average] ability to sustain attention to perform simple repetitive tasks; a below average ability to tolerate stress, pressures and with aggressive reactions to others; and a below average ability to relate[] to others." Id.

The ALJ determined that Mr. Martelo's opinion was "not overly persuasive." Id. at 27. The ALJ explained that the opinion was not offered in "vocational terms" and that it was not well supported by or consistent with the mental health treatment records. Id. The ALJ specifically stated that the available records indicated that Serrano was regularly described as "stable despite ongoing anxiety" and that there were no reports of "significant cognitive deficits or difficulty relating with others." Id. This finding is supported by substantial evidence.

Mr. Martelo provided his opinion of Serrano's functional limitations in broad, vague terms without any explanation for his assertions. Id. at 1431. While there is no requirement that medical opinions regarding SSI applications use quantitative language or specific terms, an ALJ can determine the persuasiveness of a medical opinion in part based on its supporting explanations and medical evidence. 20 C.F.R. §§ 416.913(a)(2), 404.1520c(c)(1) (describing "supportability," one of the two most heavily weighted factors in the persuasiveness analysis). Because Mr. Martelo offered no explanation or medical evidence for his short, one-paragraph opinion on Serrano, the ALJ properly determined that the opinion was not supported by the record as a whole and thus, was not overly persuasive.

Furthermore, the record is replete with support for the ALJ's finding that Serrano's behavior and cognition were inconsistent with Mr. Martelo's opinion. An evaluation by a psychiatrist at APM in 2018 demonstrated that Serrano followed directions, was able to cooperate, and was respectful. R. at 1436. She had a "fair" memory of the remote and recent past, as well as "adequate" insight and judgment. Id. at 1437. The evaluation also noted that

6

Serrano had a good relationship with her therapist, was adherent to treatment, and was motivated for change.  Id. at 1438.  The APM treatment records from her medication management appointments indicate that Serrano was consistently alert, stable, and cooperative, with an intact cognitive status.  Id. at 1432-44.  Notes from group therapy sessions indicate that Serrano was alert, well engaged, and receptive; she had "mild" interactions, listened carefully, and shared her experiences with the group.  Id. at 1445, 1451, 1453, 1456, 1458, 1461.  Individual recovery progress notes completed by Mr. Martelo state that, despite difficulty with her relationship, ongoing anxiety and PTSD, and stressors about her children, Serrano worked to decrease her angry or sad reactions to these situations, increase her communication with her partner, and apply her therapist's advice at home.  Id. at 1457, 1463, 1469.  These records are inconsistent with Mr. Martelo's opinion that Serrano's ability to follow instructions, tolerate stressors, and relate to others was impaired.

Moreover, Serrano's activities of daily living contradict Mr. Martelo's opinion that Serrano had a below average ability to sustain attention to perform repetitive tasks.  At the hearing, Serrano told the ALJ that she washed dishes, did her daughter's laundry, played games on her phone, dressed and cared for her young daughter, helped her daughter with homework, took her daughter to school on public transportation, and cooked for her daughter.  Id. at 44-54.  At a mental status evaluation with consultative examiner Joseph Primavera, Ph.D. on October 31, 2017, Serrano reported that she was able to cook, clean, manage her money, take public transportation independently, dress and bathe herself, and do chores with her partner.  Id. at 532.  In notes about Serrano's medication management plan at APM, a psychiatrist repeatedly noted that Serrano struggled with anxiety and mood issues but could care for her daughter "without difficulty."  Id. at 1432, 1434, 1439-40, 1444.  The ability to complete repetitive household

chores and take care of her daughter every day contradicts Mr. Martelo's opinion that Serrano's focus on repetitive tasks was significantly limited.

Serrano contends that the ALJ's lack of citation to the record in her discussion about the inconsistency of Mr. Martelo's opinion demonstrated a lack of support for her decision.  Pl.'s Br. at 10.  While it is essential that an ALJ set forth reasons for his or her decision, an ALJ is not required to use particular language or adhere to a specific formula or format in conducting the analysis.  Jones, 364 F.3d at 505.  The ALJ need only provide a "'discussion of the evidence' and an 'explanation of reasoning' for his [or her] conclusion sufficient to enable meaningful judicial review."  Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000)).  In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions.  Id. at 23-27.  The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.

Indeed, the ALJ's failure to cite specifically to the record in the paragraphs about medical opinions—instead referring to Serrano's "mental health treatment records" generally—does not indicate that the ALJ did not have substantial evidence to support her findings.  An ALJ is required neither to articulate how he or she considered all of the persuasiveness factors in an RFC analysis nor to cite to every supportive document in the record.  Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) ("[W]e do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records[.]  [W]e do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his [or her] responsibilities under the regulations and case law."); 20 C.F.R. §§ 416.920c(b)(1)-(2) (stating that the ALJ will explain how he or she considered only the

supportability and consistency factors for a medical source's medical opinion); see also Phillips v. Barnhart, 91 Fed. Appx. 775, 780 n.7 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it"). Here, the ALJ explicitly considered the supportability and consistency factors relative to Mr. Martelo's opinion by stating that the opinion was not well supported by and was inconsistent with the mental health records. R. at 27. The ALJ had no further responsibility to cite to the record, which contained over 1,000 pages.

Finally, Serrano suggests that, because Mr. Martelo was her treating therapist, the ALJ should have given his opinion more weight than a non-examining doctor. Pl.'s Br. at 14. However, because Serrano applied for SSI after March 27, 2017, the controlling weight formerly given to the treating physician's opinion no longer applies. See 20 C.F.R. § 404.1520c. Instead, the ALJ was required to weigh all medical providers' opinions based on their persuasiveness, not the nature of their relationship with the claimant. Id. § 404.1520c(a).

## B. Substantial Evidence Supports the ALJ's Finding That the Opinion of the Consultative Examiner Was "Not Overly Persuasive"

Serrano argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ did not properly evaluate the opinion of the consultative examiner, Dr. Primavera. Pl.'s Br. at 10-15.

Dr. Primavera performed an in-person mental status evaluation of Serrano on October 31, 2017. R. at 531. He noted that she was cooperative, well groomed, and coherent. Id. He stated that Serrano's "social skills and overall presentation were adequate." Id. In a recent and remote memory skills assessment, Dr. Primavera determined that Serrano could recall three of three objects immediately, but only one of three after a delay. Id. He stated that Serrano's cognitive

functioning fell into the average range and that her insight and judgment were "[g]ood." Id. at 532.

Dr. Primavera opined that Serrano had moderate restrictions on her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. Id. at 534. He determined that Serrano had marked restrictions on her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. Id. Dr. Primavera further indicated that Serrano had moderate restrictions on her ability to interact appropriately with supervisors and with coworkers and marked restrictions on her ability to interact appropriately with the public and respond appropriately to usual work situations and changes in a routine work setting. Id. at 535. In explaining his assessment, Dr. Primavera opined that Serrano's medical history, presentation, and mental status exam supported his findings. Id. He further stated that Serrano's depression, distractibility, anxiety, and panic attacks were factors supporting his findings. Id. at 534-35.

The ALJ determined that Dr. Primavera's opinion was "not overly persuasive." Id. at 27. The ALJ found that Dr. Primavera's opinion was not supported by his own mental status evaluation, in which Serrano had a "cooperative attitude" and "an adequate overall presentation and social skills." Id. She further indicated that Dr. Primavera's opinion was inconsistent with the record as a whole, including Serrano's activities of daily living and mental health examinations. Id. at 27.

The ALJ's determination that Dr. Primavera's opinion was not overly persuasive is supported by the contradictions between his mental status evaluation and his opinion. Though Dr. Primavera indicated that Serrano's thought process was coherent and goal directed, her eye

contact was appropriate, and her social skills were adequate, he then opined that she had restrictions on understanding instructions and on interacting with the public.  Id. at 531, 535.  He noted that she was cooperative and spoke clearly with adequate expressive language and suggested that her attention and concentration difficulties might result from anxiety or poor academic achievement.  Id. at 531.  In his opinion, however, Dr. Primavera seemingly departed from these evaluation notes and opined that Serrano's restrictions on interactions and following instructions were greater than the evaluation may have revealed.  Id. at 534-35.  The lack of support provided by Dr. Primavera's evaluation for his opinion supports the ALJ's finding that it was not overly persuasive in the RFC analysis.

Additionally, the inconsistency of Dr. Primavera's opinion with the rest of the medical record supports the ALJ's determination that it was not overly persuasive.  Serrano's activities of daily living—which included taking care of a young child, navigating public transportation for hours each day, managing her money, and doing household chores—are inconsistent with Dr. Primavera's determination that she was significantly restricted in following instructions and interacting with the public.  Id. at 44-47, 532.  Moreover, her ability to participate in and listen to group therapy sessions, have "mild" interactions in that setting, and act alert, receptive, and well engaged throughout is inconsistent with Dr. Primavera's opinion regarding her interactions with others.  Id. at 535, 1445, 1451, 1453, 1456, 1458, 1461.  Generally, her providers at APM noted that Serrano was cooperative, was working on improving her angry or sad reactions to domestic stressors, and could take care of her daughter "without difficulty."  Id. at 1432, 1434, 1439-40, 1444, 1457, 1463, 1469.  These daily activities and mental health treatment notes support the ALJ's finding that Dr. Primavera's opinion was not persuasive due to its inconsistencies.

Serrano asserts that the ALJ's lack of specific citations to evidence inconsistent with Dr.

Primavera's opinion demonstrates a lack of support for the ALJ's finding.  Pl.'s Br. at 13.  As discussed <u>supra</u> in Section V.A., an ALJ is not obligated to follow a certain formula in his or her opinion, cite to every supportive document in the record, or articulate his or her consideration of all of the persuasiveness factors.  <u>Jones</u>, 364 F.3d at 505; <u>Farganoli</u>, 247 F.3d at 41; 20 C.F.R. §§ 416.920c(b)(1)-(2).  Here, the ALJ satisfied her requirement to explain the "supportability" and "consistency" factors by explaining that Dr. Primavera's opinion was not well supported by his mental status evaluation and was inconsistent with the record as a whole.  <u>Id.</u> at 27-28.

Serrano further argues that the lack of citation undermines support for the ALJ's findings and that the ALJ "substituted her lay opinion for those of medical professionals."  Pl.'s Br. at 13-14.  She contends that the ALJ relied on the State agency psychological consultant's persuasive opinion as a "single piece of evidence" that was "overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)."  <u>Id.</u> at 14 (quoting <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983)).  Serrano alleges that the ALJ should have weighed an examining medical source's opinion more heavily than a non-examining source's opinion.  <u>Id.</u>  However, as discussed <u>supra</u> in Section V.A., because Serrano applied for SSI after March 27, 2017, the ALJ was required to weigh all medical providers' opinions based on their persuasiveness, not the nature of their relationship with the claimant.  20 C.F.R. § 404.1520c(a).  Serrano essentially asks this Court to reweigh the evidence and reach a conclusion more favorable to her.  This Court, however, is not authorized to reweigh the evidence de novo, <u>Monsour Med. Ctr.</u>, 806 F.2d at 1190, but only to determine whether substantial evidence exists to support the ALJ's finding, <u>Torres v. Barnhart</u>, 139 F.App'x 411, 413 (3d Cir. 2005).  In this case, the ALJ identified sufficient evidence of record to meet that standard.

**C.    The ALJ Satisfied Her Duty to Develop the Record and Did Not Err in Not Pursuing an Additional Response from APM**

Serrano contends that the ALJ failed to develop the record by not enforcing a subpoena for records from APM.  Pl.'s Br. at 15.  On April 3, 2019, the ALJ issued a subpoena for individual therapy notes from APM for the time period between May 1, 2015 and August 27, 2017 upon Serrano's counsel's request.  Id.  APM did not respond before the ALJ issued her decision on May 20, 2019.  Id. at 15-16.

Both parties admit that APM provided all the therapy notes possible, as a change in computer systems removed access to some individual therapy notes.  Def.'s Br. (Doc. No. 22) at 22-23; see Pl.'s Reply Br. (Doc. No. 23) at 6; R. at 364.  APM provided bio-psychosocial evaluation reports from May 29, 2015 and February 7, 2018; individual recovery progress notes from August 28, 2017 to July 16, 2018; group and family therapy progress notes from February 7, 2018 to July 20, 2018; individual therapy progress notes from July 20, 2018 to December 11, 2018; and medication management records from July 8, 2015 to September 14, 2016 and from July 20, 2018 to November 9, 2018.  R. at 413-36, 645-63, 1432-1516.  Mr. Martelo, Serrano's therapist at APM, also provided a medical opinion based on her weekly visits.  Id. at 1431.

Because of the non-adversarial nature of Social Security proceedings, an ALJ has "a duty to develop a full and fair record" by attempting to secure all of the information relevant to deciding the claimant's claim.  Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) (citations omitted).  This is true even if the claimant is represented by counsel at the hearing, though in such cases the duty is somewhat lessened.  See Rutherford, 399 F.3d at 557; Boone v. Barnhart, 353 F.3d 203, 208 n.11 (3d Cir. 2004) (citations omitted); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (noting that an ALJ must "assume a more active role when the claimant is unrepresented").  Specifically, whenever a claimant is represented, an ALJ can assume that the

13

claimant, through his or her counsel, "is making the strongest case possible for benefits."

Colavito v. Apfel, 75 F. Supp. 2d 385, 399 n.21 (E.D. Pa. 1999).  Thus, the onus is on counsel to

ensure that the ALJ is aware of all of the evidence favorable to a claimant's case and to probe all

of the relevant issues.  Turby v. Barnhart, 54 F. App'x 118, 122-23 (3d Cir. 2002) (citations

omitted); Harrison v. Colvin, No. 14-cv-00719, 2014 WL 5148156, at *4 (W.D. Pa. Oct. 14,

2014).  Ultimately, the claimant has the burden to present evidence to demonstrate that he or she

is unable to engage in any substantial gainful activity.  See Santiago v. Comm'r of Soc. Sec., 273

F. App'x 211, 213 n.1 (3d Cir. 2008) (citing 42 U.S.C. § 1382c(3)(A)).  Absent a clear showing

of prejudice for failure to investigate further, courts have denied remand.  See, e.g., Glenn v.

Comm'r of Soc. Sec., 67 F. App'x. 715, 719 (3d Cir. 2003).

 The Social Security Regulations provide that, "[w]hen it is reasonably necessary for the

full presentation of a case, an [ALJ] . . . may, on his or her own initiative or at the request of a

party, issue subpoenas for . . . the production of books, records, correspondence, papers, or other

documents that are material to an issue at the hearing."  20 C.F.R. §§ 404.950(d)(1),

416.1450(d)(1).  The Social Security Administration's Hearings, Appeals and Litigation Law

Manual ("HALLEX"), similarly provides that "[w]hen it is reasonably necessary for the full

presentation of a case, an administrative law judge (ALJ) may issue a subpoena on his or her

own initiative or at the request of a claimant or appointed representative."  HALLEX I-2-5-78,

*available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-78.html; see also 20 C.F.R.

§§ 404.950(d), 405.332, 416.1450(d).  This language gives broad discretion to the ALJ to decide

whether or not to issue a subpoena.  See, e.g., Torres, 139 F. App'x at 414; Mack v. Astrue, No.

09-2028, 2010 WL 571782, at *6 (E.D. Pa. Feb. 12, 2010).  HALLEX further addresses what

should occur if an individual refuses to comply with a subpoena:

> If an individual refuses or fails to comply with a subpoena, the administrative law judge (ALJ) will consider any change in circumstance since issuing the subpoena and re-evaluate whether the evidence or facts requested are reasonably necessary for the full presentation of the case. . . . If the ALJ finds the information is reasonably necessary for the full presentation of the case, he or she will prepare a memorandum to the Office of the General Counsel (OGC) Regional Chief Counsel, requesting enforcement of the subpoena.

See HALLEX, Chapter I-2-5-82, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-82.html.[5]

Although an ALJ has broad discretion to decide whether to issue a subpoena, the Third Circuit does not appear to have specifically addressed the question of whether an ALJ must enforce a subpoena that he or she has issued.  See Mack, 2010 WL 571782, at *1; but see Gonell De Abreu v. Colvin, No. 16-cv-4892, 2017 WL 1843103, at *5 (E.D.N.Y. May 4, 2017) (an ALJ's enforcement of a subpoena is a matter of discretion); Serrano v. Barnhart, No. 02 Civ. 6372, 2005 WL 3018256, at *4 (S.D.N.Y. Nov. 10, 2005) (same).  Courts in this district have held that, although an ALJ may not be required to enforce a subpoena he or she has issued, an ALJ "should at least articulate his [or her] reasoning for declining" to do so.  See Mack, 2010 WL 571782, at *1; see also James v. Astrue, No. 11-253, 2011 WL 7143113, at *12-13 (E.D. Pa. Dec. 27, 2011), report and recommendation adopted, No. 11-CV-253, 2012 WL 346676 (E.D.

---

[5]     Moreover, 42 U.S.C.A. § 405(e) provides:

> (e) Judicial enforcement of subpoenas; contempt

> In case of contumacy by, or refusal to obey a subpoena duly served upon, any person, any district court of the United States for the judicial district in which said person charged with contumacy or refusal to obey is found or resides or transacts business, upon application by the Commissioner of Social Security, shall have jurisdiction to issue an order requiring such person to appear and give testimony, or to appear and produce evidence, or both; any failure to obey such order of the court may be punished by said court as contempt thereof.

Pa. Feb. 3, 2012); Navarro v. Astrue, No. CIV. A. 09-1788, 2010 WL 1649990, at *5 (E.D. Pa.

Mar. 26, 2010), report and recommendation adopted, No. CIV. A. 09-1788, 2010 WL 1632906

(E.D. Pa. Apr. 19, 2010).  The Third Circuit, however, has recognized that a violation of the

procedural guidance in HALLEX is not judicially enforceable.  See Bordes v. Comm'r of Soc.

Sec., 235 F. App'x 853, 859 (3d Cir. 2007).

     Moreover, even if the ALJ erred in not following HALLEX I-2-5-82 by not specifically

justifying why no further enforcement of the subpoena was necessary, the procedural guidance

found in HALLEX "lack the force of law and create no judicially-enforceable rights."  Bordes,

235 F. App'x at 859; Ogden o/b/o K.M.R. v. Soc. Sec. Admin., No. 16-00805, 2018 WL

1156241, at *5 (E.D. Pa. Mar. 5, 2018) ("[T]he HALLEX does not have the force of law and it

creates no judicially enforceable rights."); see also Moore v. Apfel, 216 F.3d 864, 868 (9th Cir.

2000) ("HALLEX is a purely internal manual and as such has no legal force and is not binding."

(internal citations omitted)).  Here, the ALJ was not required to enforce the subpoena for the

records from APM, since the relevant case law recognizes no judicially enforceable duty to

follow HALLEX.  Because the HALLEX guidance merely states than an ALJ must only

"*consider* any change in circumstance since issuing the subpoena and re-evaluate whether the

evidence or facts requested are reasonably necessary for the full presentation of the case" and has

otherwise no legal responsibility to explain his or her reasoning, Serrano has failed to make out a

legally cognizable claim that the ALJ erred in failing to enforce the subpoena.  See HALLEX,

Chapter I-2-5-82, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-82.html

(emphasis added).

     Furthermore, if the ALJ had improperly failed to require APM to respond to the

subpoena, Serrano has failed to show how she was prejudiced by this failure.  See James, 2011

16

WL 7143113, at *13 ("this court has recognized that a violation of a HALLEX provision is not cognizable where the claimant has not shown how he [or she] was prejudiced" (citing Thompson v. Astrue, No. 09-3383, 2010 WL 1718212, at *6 (E.D. Pa. Apr. 27, 2010))); Estrella v. Astrue, No. 08-5804, 2010 WL 742618, at *3 (E.D. Pa. Mar. 2, 2010).  Serrano argues that, because the individual therapy notes from APM were missing, the ALJ did not base her final decision on substantial evidence.  Pl.'s Br. at 18.  She contends that the ALJ found that the opinion of State agency psychological consultant, Frank Mrykalo, Ed.D., was persuasive only as a result of the lack of notes from APM.  Id.

On November 8, 2017, Dr. Mrykalo reviewed Serrano's mental health treatment records and completed a mental residual functional capacity assessment.  R. at 108-110.  He opined that Serrano was fairly capable of "making simple decisions[,] coping with minor demands[,] follow[ing one to two] step task directives[,] perform[ing] simple routine . . . tasks[, and] comprehend[ing] and retain[ing] simple task instructions."  Id. at 110.  Dr. Mrykalo indicated that Serrano was moderately limited in the ability to understand and remember detailed instructions because of her depression and anxiety.  Id. at 109.  He opined that Serrano was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from her mental conditions and to perform at a consistent pace without an unreasonable amount of rest periods.  Id.  He further indicated that she was moderately limited in her ability to interact with the general public but was not significantly limited in her ability to respond appropriately with coworkers, peers, and supervisors.  Id.  Dr. Mrykalo opined that Serrano had no adaptative limitations.  Id. at 110.

The ALJ found Dr. Mrykalo's opinion persuasive.  Id. at 28.  The ALJ stated that Dr.

Mrykalo's opinion was well supported by "the objective mental status evidence and consistent with the record as a whole, including claimant's treatment history and daily activities." Id. This finding was supported by substantial evidence, despite Serrano's argument that it was the result of the lack of some of APM's therapy notes.

As discussed supra in Sections V.A. and V.B., the record is replete with Serrano's mental status updates and treatment records; these repeatedly indicate that she had intact cognitive function, was cooperative, alert, and receptive, and responded appropriately to her medical providers and peers. Id. at 535, 1432, 1434, 1439-40, 1444-45, 1451, 1453, 1456-58, 1461, 1463, 1496. The majority of this evidence regarding Serrano's ability to interact appropriately with peers and colleagues was provided by APM directly. Id. at 1432-1516. Serrano has not made an argument as to what the unavailable APM notes would have revealed, except that their absence led to a failure to develop the record. Pl.'s Br. at 15-18. The existing APM notes are consistent with Dr. Mrykalo's opinion regarding Serrano's ability to interact with others, which supports the ALJ's finding that his opinion was persuasive.

Serrano's activities of daily living also support Dr. Mrykalo's opinion that Serrano was capable of understanding simple instructions, coping with minor demands, and carrying out simple tasks. As discussed supra in Sections V.A. and V.B., Serrano's frequent activities included dressing, bathing, and feeding her daughter and herself, taking public transportation to and from her daughter's school, playing games on her phone, and doing laundry. R. at 44-54. Though she does not cook complex meals, Serrano makes sandwiches, microwaves frozen meals, and heats soup for her daughter. Id. at 308. She can pay bills, count change, handle a savings account, and use a checkbook. Id. at 309. Her ability to complete these simple, routine tasks is consistent with Dr. Mrykalo's opinion that Serrano is moderately limited in her ability to

18

understand and carry out only complex instructions.  Here, the ALJ's finding that Dr. Mrykalo's opinion was persuasive is supported by substantial evidence and Serrano provides no argument as to how she was prejudiced by the lack of some notes from APM regarding her ability to complete these tasks.

Serrano further maintains that the ALJ did not properly develop the record because she "did not supplement [it] with another source of evidence" to compare against Dr. Mrykalo's opinion.  Pl.'s Br. at 18.  Although an ALJ has a duty to "develop a full and fair record in social security cases," Ventura, 55 F.3d at 902, "the ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof,'" Crocker v. Comm'r of Soc. Sec., No. 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) (quoting Lynn v. Comm'r of Soc. Sec., No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)).  The claimant bears the burden of proving that he or she is disabled and, consequently, is responsible for producing evidence in support of his or her claim.  Here, the ALJ was obligated only to ensure that there was a sufficient record for at least the 12-month period preceding the July 27, 2017 date the application was filed.  20 C.F.R. §§ 404.1512(b)(1)(ii), 416.912(b)(1)(ii); cf. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (rejecting claimant's argument that the ALJ had a duty to develop the medical record for the time period after his application for benefits); Brown v. Comm'r of Soc. Sec., 709 F. Supp. 2d 248, 257 (S.D.N.Y. 2010) (the ALJ did not abuse his discretion by not making efforts to seek directly from claimant's treating physician records for the period following the application date).  In developing the complete medical history, the ALJ must make an initial request for evidence and one follow-up request if the source does not comply.  20 C.F.R. §§ 404.1512(b)(1)(i), 416.912(b)(1)(i).

In this case, the ALJ satisfied her obligation by obtaining the only accessible medical

records from Serrano's treating therapist and APM, which span a multitude of treatments since 2015.  See R. at 413-36, 645-63, 1432-1516.  The ALJ could not obtain the records that APM could no longer access because of the computer system change; however, she did consider the medical opinion of Mr. Martelo, who had treated Serrano weekly since May 2015.  Id. at 27, 1431.  These records collectively span a period of three and one-half years.  Id. at 413-36, 645-63, 1432-1516.  In her determination of the persuasiveness of the medical opinions, the ALJ indeed compared these records to Dr. Mrykalo's opinion; she ultimately determined his opinion was persuasive as consistent with Serrano's treatment history and the record as a whole.  Id. at 28.  Thus, Serrano's argument that the record was not complete without the specific individual therapy notes from sessions with Mr. Martelo fails given the ALJ's consideration of extensive records and Mr. Martelo's own medical opinion in rendering her decision.

**VI.**     **CONCLUSION**

        For the reasons set forth above, this Court finds that the ALJ's decision is supported by substantial evidence.  Therefore, Plaintiff's Request for Review and Motion for Summary Judgment will be denied and dismissed.  An appropriate order follows.

Dated: September 30, 2021

                              BY THE COURT:


                              */s/ Marilyn Heffley*
                              MARILYN HEFFLEY
                              UNITED STATES MAGISTRATE JUDGE